**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**
*Norfolk Division*

**UNITED STATES OF AMERICA,**

    v.                                                  **Criminal No. 2:22-CR-00061**

**DAVID MICHAEL HOOKE,**

          **Defendant.**

**DEFENDANT'S SENTENCING POSITION PAPER**

COMES NOW, Defendant, David Michael Hooke ("Mr. Hooke"), by and through the undersigned counsel, in accordance with Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.2 of the United States Sentencing Guidelines ("U.S.S.G.") (including Policy Statements) and this Court's Sentencing Procedures Order entered on August 25, 2022, and respectfully submits the following Sentencing Position Paper, stating as follows:

**I.    INTRODUCTION AND PROCEDURAL HISTORY**

This case originated in May 2022 with a one count Indictment filed against Mr. Hooke. The United States alleged that Mr. Hooke was in possession of images of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(5) between May 18, 2021 and September 16, 2021.  Mr. Hooke's Initial Appearance was conducted on July 11, 2022.  On July 14, 2022, Mr. Hooke's arraignment and detention hearing was held.  Mr. Hooke waived formal indictment, waived his right to an immediate detention hearing and confirmed his identity.   On August 25, 2022, pursuant to Federal Rule of Criminal Procedure 11, Mr. Hooke appeared before the Honorable Robert J. Krask, a United States Magistrate Judge and pled guilty to Count One of the Indictment, Possession of Images of Minors Engaging in Sexually Explicit Conduct.  Mr. Hooke is scheduled to be sentenced by this Honorable Court on March 10, 2023.

## II.     SENTENCING AND GUIDELINE PROVISIONS

In accordance with a written plea agreement, and his pending crime of conviction, Mr. Hooke faces a statutory minimum of ten (10) years. Mr. Hooke was interviewed by the United States Probation Office on October 13, 2022, and the Presentence Investigation Report ("PSR") was prepared and filed with this Court on November 29, 2022. ECF No.: 26. A revised PSR with Addendum was filed on February 10, 2023. ECF No.: 27.

The PSR assigned a Base Offense level of 18. PSR at ¶26. The Specific Offense Characteristics increase the Base Offense level by 11 levels, resulting in an Adjusted Offense Level of 29, but allowing for the following reductions: the 2-point reduction for acceptance of responsibility and the 1-point reduction for assisting authorities, resulting in a net offense level of 26. Id.

Mr. Hooke has no juvenile criminal history but his adult criminal history results in a criminal history score of ten, plus an additional 2 points because Mr. Hooke committed the instant offense while being under a criminal justice sentence at the time of the offense. Mr. Hooke has a total of 12 points, resulting in a Criminal History Category V. With a base offense level of 26 and Criminal History Category V, under the United States Sentencing Guidelines, the advisory range for Mr. Hooke is 110 to 137 months in prison with a restricted range of 120 to 137 months, plus a recommended five (5) years of supervised release.

Pursuant to Paragraph 7 (4) of this Court's Sentencing Guideline Order, Mr. Hooke is expressly requesting that this Court sentence him to only the mandatory minimum of ten (10) years, 120 months, which is within the applicable advisory range.

### III.     GENERAL BACKGROUND INFORMATION

Oddly enough, Mr. Hooke was not the original target of the United States' investigation. He was simply at the wrong place at the wrong time, although one might argue that everything happens for a reason. While Mr. Hooke will remain incarcerated for a significant period of time, as will be explained *infra*, if he is placed in a secure facility and allowed to participate in a Sexual Offender Management Program ("SOMP") it may well be the best thing that could have happened to him at this point of his life.

By way of general background, in March 2021, the FBI received information related to the potential distribution of child pornography from an IP address in Chesapeake, Virginia, beginning in December 2020, and continuing until April 2021. See Application for Search Warrant USA 0267-0328); see also PSR at ¶12. Guy Warren, aka, Morris Guy Warren is alleged to have been the owner of the IP address and a resident of the premises in question - 2619 Pocaty Road in Chesapeake, Virginia (the "premises"). Id. The premises served as a residential facility for men who had been released from prison. Mr. Hooke had resided at the premises since August 2019. On September 13, 2021, a search warrant from this Court was issued for the premises and on September 16, 2021, law enforcement officers executed the warrant. PSR at ¶12 (10). During the search of the premises, after he was advised of his Miranda rights, Mr. Hooke was interviewed, at which time, he admitted that he had viewed child pornography. Id.

Mr. Hooke has been in custody since March 20, 2022, when he was arrested for a probation violation relating to his earlier state court charges. On April 27, 2022, Mr. Hooke was convicted of a probation violation and sentenced to a term of three months. The instant matter followed on the heels of the probation violation, when the Indictment in this case was handed down by the Grand Jury on May 18, 2022.

## IV. THE APPROPRIATE SENTENCE IN THIS CASE

A. <u>Nature and Circumstances of the Offense</u>

Mr. Hooke's illegal conduct is explained in the Statement of Facts (ECF No.: 24) ("SOF") and the "Offense Conduct" section of the Presentence Investigation Report (ECF No.: 27) ("PSR"). Perhaps no trend is more apparent than one of widespread addiction: people in society have become addicted to nearly anything and everything, whether it be to a substance, an activity or an object. The internet and child pornography are no exception. Although the advent of the internet is widely hailed as one of the greatest inventions of the 20th century, it also has a serious downside: the internet provides people with a quick and relatively inexpensive way to access deviant materials, while keeping the individual feeling anonymous and with a sense of decreased legal risk.[1] In previous decades, materials would have to be sent through the postal system, or bought at a store. <u>Id</u>. Offenders can now access the internet to find their materials, and the internet allows a person to purchase, trade, download, or produce materials with the feeling of fewer societal or legal risks than they would otherwise consider. <u>Id</u>.

Mr. Hooke will candidly and openly admit that his conduct is nothing short of vile and contemptible. When confronted by law enforcement in September 2021, he agreed to an immediate interview, and a follow up interview, wherein he admitted his involvement and did not attempt to conceal his actions or behavior. Within five days of his arraignment in this case, Mr. Hooke had signaled his intention to cooperate and plea, expressing remorse for his actions, and immediately accepting responsibility. Throughout the process, Mr. Hooke has been

---

[1] Sitarz, Rachel; Rogers, Marcus; Bentley, Lonnie; and Jackson, Eugene, "Internet Addiction to Child Pornography" (2014). Annual ADFSL Conference on Digital Forensics, Security and Law. 6. https://commons.erau.edu/adfsl/2014/wednesday/6

cooperative and has been completely candid regarding his involvement and personal shortcomings.

B. The History and Characteristics of the Defendant

To put it mildly, Mr. Hooke is ashamed of his conduct and acknowledges the seriousness of his crime. Although his criminal history score is troubling, there is no history of violence, no direct contact with minors, and only one drug charge. His charges relate directly to a lack of stability or steady employment. Mr. Hooke is 48 years old. He is single, and has no children. To be perfectly clear, he is not proud of where he is in life. His parents separated when Mr. Hooke was four years old, and he was forced to divide his time between Virginia and Florida during his formative years. According to Mr. Hooke, he did not experience any physical or sexual abuse, but did witness volatility, arguments and was exposed to both drugs and alcohol at any early age. The family struggled financially, and Mr. Hooke admits that his poverty and smaller stature often resulted in bullying at school. Both of his biological parents are now deceased. His father passed away at the early age of 49 and his mother passed away at age 70. Sadly, Mr. Hooke's step-dad, Billy Keatts, who lives in Rocky Mount, NC, is his only real family connection. Upon graduation from high school, Mr. Hooke attended college for a short time, then joined the United States Marine Corp. He served his country for four years, then returned home and tried, rather unsuccessfully, to find his way. With the exception of his earlier conviction for possession of child pornography (discussed below), Mr. Hooke's criminal convictions all involve petty crimes, mostly misdemeanors involving money, property, driving under the influence and possession of marijuana. Mr. Hooke's criminal history demonstrates a difficult life and lack of direction.

As this Court has observed, in calculating the advisory guideline sentence, the guidelines reject the consideration of many of the critical factors that the Court is required to consider pursuant to 18 U.S.C. §3553 (a). U.S. v. Cherry, 366 F. Supp. 2d 372, 378 (E.D. Va. 2005) (citing United States v. Ranum, 353 F. Supp. 2d 984, 986-87 (E.D. Wis. 2005). Under the guidelines, the Court is generally prohibited from considering the defendant's age, his education and vocational skills, his mental and emotional condition, his physical condition including drug or alcohol dependence, his employment record, his family ties and responsibilities, his socio-economic status, his civic and military contributions, and his lack of guidance as a youth. Id. However, in Cherry, this Court deftly recognized that the guidelines' prohibition of considering these factors "cannot be squared with the § 3553(a)(1) requirement that the court evaluate the 'history and characteristics' of the defendant" and that "in some cases the guidelines will clash with § 3553(a)'s primary directive: to "impose a sentence sufficient, but not greater than necessary to comply with the purposes" of sentencing. Id. In fact, all of these factors are outlined in great detail in the very report that the Court considers when sentencing a defendant.

1. *Prior Conviction and Probation Violation in March 2022*

In June 2016, a grand jury sitting in the County of Franklin, Virginia, indicted Mr. Hooke on five counts of possessing sexually explicit visual material of a minor in violation of Virginia Code§ 18.2-374.1:1. USA-0253-0257. On August 1, 2016, Mr. Hooke entered into a plea agreement with the Commonwealth of Virginia and pled guilty to all five counts. USA-0262-0264. Mr. Hooke was sentenced to a period of five years on each count, with four years suspended on each count. USA-0275-0278. He was released in August 2019, moved into the residence at 2619 Pocaty Road in Chesapeake, Virginia, and began working to earn a living. Despite having been placed on probation, Mr. Hooke reports that his experience was not ideal.

His restrictions were lenient, and he was never advised that he was not permitted to have or access a computer. In fact, within eight months of his release, the global pandemic changed the world as we know it. The COVID-19 global pandemic forced probation departments to change their practices overnight and presented many challenges for probation departments.[2] Unable to appear in person to report, Mr. Hooke was required to check in using a computer, and often encountered difficulties. Although he needed counseling and therapy, he was unable to pursue these services, and experienced problems with completing assignments and logging in generally. Mr. Hooke is embarrassed that despite having been convicted of essentially the same crime previously, he allowed himself to reoffend. Whether his fault, the fault of the system, or a byproduct of the global pandemic, or a combination thereof, one this is clear: Mr. Hooke was unable to get the help he needed both during his state incarceration and following his incarceration. Indeed, in considering the offense conduct, while not diminishing the impact on the victims of the child pornography crime, it should be noted that Mr. Hooke did not receive the help he so desperately needed which led to his recidivism. He is confused about his addiction, disheartened and does not understand why he has accessed or is attracted to the forbidden materials. Mr. Hooke has dabbled with serious drugs, cocaine, LSD, ecstasy, and has an addiction to alcohol. He knows he needs help, and wants to receive treatment for mental health treatment for both depression and his addictions.

---

[2] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8902315/

C. <u>The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, To Afford Adequate Deterrence and to Protect the Public from Further Crimes</u>

Mr. Hooke faces a significant period of incarceration. During this time, he has wholeheartedly committed to undergo a serious life-altering transformation. A sentence of the mandatory minimum of 10 years will be sufficient to reflect the seriousness of Mr. Hooke's offense, promote respect for the law, and provide just punishment. A sentence of ten years - 120 months - will still reflect the seriousness of the offense, while allowing Mr. Hooke to serve his time and most importantly - get the help he needs and is requesting, then return to society and become a productive member of society. Users of child pornography often respond well to treatment, especially compulsive/addicted and situational users.[3] Reports suggest that "[u]rges to view child pornography cannot be punished away, any more so than an urge for heroin or alcohol can be punished away. Under such circumstances, treatment may be a critical component in reducing whatever risk may exist. Ordinarily the ability of treatment to reduce any such risk requires an understanding of the condition needing treatment, as well as an appreciation of evidence regarding treatment efficacy." EVALUATING AND REDUCING RISK IN ONLINE CHILD PORNOGRAPHY CASES, Fred S. Berlin, Journal of the American Academy of Psychiatry and the Law Online April 2019, JAAPL.003832-19.[4]

A sentence of ten years will also be sufficient to deter Mr. Hooke from engaging in further criminal activity and to deter others who contemplate committing this serious crime. Research indicates increases in the severity of punishment are less likely than the certainty of

---

[3]https://www.psychologytoday.com/us/blog/love-and-sex-in-the-digital-age/202011/understanding-users-child-pornography
[4] https://doi.org/10.29158/JAAPL.003832-19

8

punishment to produce deterrent benefits. *See* Valier Wright, Deterrence in Criminal Justice, Evaluating Certainty vs. Severity of Punishment, The Sentencing Project, at 1 (Nov. 2010) (emphasis in the original) [hereinafter Sentencing Project Report]; see also Anthony N. Doob & Cheryl Marie Webster, Sentence Severity and Crime: Accepting the Null Hypothesis, 30 CRIME & JUSTICE 143, 146 (2003) ("harsh sentences do not deter"). Thus, sentencing Mr. Hooke to a lengthy period of incarceration would not have a higher effect of deterring him from crimes in the future. Similarly, more severe sentences fail to enhance public safety. *See generally* Sentencing Project Report. Contrary to ideology that "putting people in prison for years or even decades should prevent offenders from re-offending by incapacitating them and/or deterring would-be-offenders from committing crimes[,]" studies fail to support these assertions. Id. at 6. A series of studies, examining the public safety effects of imposing longer periods of imprisonment, reveal that longer prison sentences were associated with a three percent increase in recidivism. Id. In fact, [o]ffenders who spent an average of 30 months in prison had a recidivism rate of 29%, compared to a 26% rate among prisoners serving an average sentence of 12.9 months." Id. Similarly, being incarcerated versus remaining in the community was associated with only a seven percent increase in recidivism. Id. at 6-7.

    D. Other Relevant Facts

    While his behavior can be categorized as deviant, Mr. Hooke is not a bad person, nor is he a violent person. He has been misguided and adrift, but is also ashamed and willing to make amends and change. During the pendency of this case, Mr. Hooke was encouraged to read the Victim Impact Statements provided by the United States, and did just that. In that process, Mr. Hooke learned how his seemingly harmless – although not innocent or lawful – viewing of images, fuels the demand and the industry, and has destroyed the lives of young women from

9

every corner of society. Perhaps for the first time, he now understands and appreciates the full impact of his behavior on the victims, the young women who were unwillingly subjected to the horrific acts that are filed and distributed across the globe.

In determining the appropriate sentence to impose in this case along with its recommendations for the Bureau of Prisons, Mr. Hooke respectfully asks this Court to also consider recommending: (1) placement in a sex offender treatment program; (2) enrollment in mental health treatment; (3) enrollment in alcohol treatment; (4) enrollment in drug/substance abuse treatment; and (5) enrollment in a vocational education program.

## V.  **CONCLUSION**

Mr. Hooke understands that restitution is required, and will address the issue of the amount of restitution in his Response to the United States' Position on Sentencing. Mr. Hooke asks this Court to sentence him to only the mandatory minimum of ten (10) years (120 months), which is within the applicable advisory range.

Date: February 23, 2023                                        Respectfully Submitted,

                                                                                DAVID MICHAEL HOOKE


                                                                                /s/ Mary T. Morgan, Esq._____
                                                                                Mary T. Morgan, Esq. VSB No.: 44955
                                                                                GOLIGHTLY MULLIGAN & MORGAN, PLC
                                                                                4646 Princess Anne Road, Unit 104
                                                                                Virginia Beach, Virginia 23462
                                                                                (757) 609-2702
                                                                                (866) 212-1310 (Facsimile)
                                                                                mary@golightlylaw.com
                                                                                *Counsel for David Michael Hooke*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 23, 2023, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing (NEF) to all counsel of record, including:

Elizabeth M. Yusi, Esq.
ASSISTANT UNITED STATES ATTORNEY
Eastern District of Virginia, Norfolk Division
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Phone: (757) 441-6791
Fax: (757) 441-6689
Elizabeth.Yusi@usdoj.gov

and sent a copy to the following via electronic mail:

Joshua A. Coleman
Senior U.S. Probation Officer
Eastern District of Virginia
Walter E. Hoffman U.S. Courthouse
600 Granby Street, Suite 200
Norfolk, Virginia 23510
joshua_coleman@vaep.uscourts.gov

/s/ Mary T. Morgan, Esq.
Mary T. Morgan, Esq. VSB No.: 44955
GOLIGHTLY MULLIGAN & MORGAN, PLC
4646 Princess Anne Road, Unit 104
Virginia Beach, Virginia 23462
(757) 609-2702
(757) 346-3185 (Facsimile)
mary@golightlylaw.com
*Counsel for David Michael Hooke*