**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:22-cr-61 |
| | ) | |
| DAVID MICHAEL HOOKE | ) | |
| | ) | |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, by Jessica D. Aber, United States Attorney, Elizabeth M. Yusi, Assistant United States Attorney, and Adam Braskich, Trial Attorney, offers this position paper regarding the sentencing factors stated in 18 U.S.C. § 3553(a). The government has no objection to the content of the Presentence Investigation Report (PSR). According to the PSR, the correct advisory calculation under the United States Sentencing Guidelines (U.S.S.G. or "Guidelines") is a range of 120-137 months of imprisonment[1]. Based on the nature of the offense and related conduct, the United States asks the Court to impose the mandatory minimum term of 120 months' imprisonment, followed by lifetime supervised release.

**I.   BACKGROUND**

On August 25, 2022, defendant David Michael Hooke ("the defendant" or "Hooke") pleaded guilty to the sole count of the pending indictment, charging Hooke with Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), occurring between approximately May 18, 2021, and September 16, 2021. ECF Nos. 19, 22. The indictment also alleged that on

---

[1] The low end of the Guidelines is restricted to 120 months because the statutory mandatory minimum is 120 months' imprisonment.

1

August 1, 2016, Hooke was convicted in Franklin (Virginia) Circuit Court of five counts of Possession of Child Pornography, in violation of Va. Code § 18.2-374.1:1, and that this constituted a prior conviction "relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography." ECF No. 22 (citing 18 U.S.C. § 2252(b)(2), which mandates imprisonment of "not less than 10 years").

### A. Hooke's Current Criminal Conduct

Defendant Hooke was identified in the current case as part of a police investigation that began in December 2020. At that time, law enforcement officers observed a computer associated with IP address 70.161.222.32 that was sharing child sexual abuse material (CSAM)[2] via BitTorrent, a peer-to-peer network. The same computer continued sharing CSAM through April 2021. During that four-month period, investigators downloaded over 2,000 CSAM files from the IP address. Investigators determined that IP address 70.161.222.32 resolved to internet service provider Cox Communications ("Cox"), then served a subpoena on Cox, which revealed that the account holder for the internet service at that IP address was Morris Guy Warren ("Warren"), located at a residence in Chesapeake, Virginia ("the Chesapeake Address"). Investigators learned that the Chesapeake Address was a residential facility named Onesimus Ministries that houses men who have recently been released from prison.[3]

---

[2] Throughout this Memorandum, the Government uses the term "Child Sexual Abuse Material" (CSAM) as a substitute for the term "child pornography" or "visual depictions of minors engaging in sexually explicit conduct" to better describe the reality of the crime.

[3] *See* http://onesimus-ministries.org/trainingctr.html.

2

On September 16, 2021, law enforcement officers executed a search warrant for the Chesapeake Address. The warrant authorized officers to seize and search the contents of any electronic devices on the premises. During the search, investigators interviewed the occupants of the residence, who included Warren and Defendant Hooke. They learned that the internet service was in listed Warren's name, but that he shared the internet access with other residents, including Hooke. Officers searched Hooke's private bedroom at the residence and seized numerous electronic devices, including a Dell desktop computer, HP laptop computer, a MicroSD card, and a USB thumb drive.

Forensic examiners reviewed the contents of Hooke's devices and found evidence that Hooke had possessed and distributed CSAM. On both the MicroSD card and USB thumb drive, Hooke had a similar if not identical collection of approximately 650 CSAM images that met the legal definition of child pornography. Those images consisted mostly of young teenage girls in modeling poses, nude or partially nude, and engaged in the lewd, lascivious display of their genitalia. On Hooke's Dell desktop computer were several CSAM images, including a thumb cache image of a young girl in the lap of a man who was holding the girl's legs open and exposing her bare vagina. Investigators also found the BitTorrent software installed on Hooke's computer, as well as CCleaner, a program that removes computer files, and which offenders often employ to purge their devices of CSAM after viewing it.

When interviewed, Hooke admitted having the peer-to-peer software installed his computers, and he admitted there was CSAM on his laptop and thumb drive. He admitted downloading CSAM about a month before the interview.

### B. Defendant's Prior Convictions

The PSR calculates that the defendant's criminal history score is 12, with 10 points based on prior convictions and an additional 2 points for the defendant committing this offense while under supervision in another case. Hooke's criminal history category is V, the second highest on the sentencing chart.

According to the PSR (¶¶ 42-51), Hooke was convicted of theft in 2009, DUI in 2007, check fraud in 2007 and 2011, another DUI in 2015, and most troublingly, possession of child pornography in 2016. It was for the 2016 child exploitation offense that Hooke was still under court supervision when he was once again caught in possession of child pornography.

## II. STANDARDS GOVERNING SENTENCING

A sentencing court must consider both the advisory Sentencing Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. *United States v. Booker*, 543 U.S. 220, 264 (2005). The Supreme Court instructed that the sentencing court should calculate the Sentencing Guideline range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. *Id.* at 49-50. *Gall v. United States*, 552 U.S. 38 (2007). In the event the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one.").

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they

4

deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence." *United States v. Simmons*, 269 Fed. Appx. 272 at *1 (4th Cir. 2008) (*citing United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)).

### III.   FACTORS UNDER 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), when imposing a sentence, the Court should consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to promote the goals of sentencing, (4) the kinds of sentences available, (5) the sentencing guideline range, (6) any pertinent policy statement issued by the Sentencing Commission, (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims of the offense.

**A.   Nature and Circumstances of the Offense and Defendant's History and Characteristics**

**1.   The Nature of the Offense**

Hooke possessed images of children being sexually abused.  By downloading, viewing, and retaining copies of that material, and by making the material available to other offenders through peer to peer software, he caused real harm to the victims depicted in those images. As many child exploitation victims have attested, such as those in the Victim Impact Statements provided to the Court, they are repeatedly re-traumatized by the continued circulation of images showing them experiencing the worst moments of their lives. Without regard for the harm he would cause to the victims, Hooke collected and possessed CSAM for his own sexual gratification.

The words of the identified victims in this case illustrate the harm that Hooke has caused them:

"Lexie's" mother writes that due to Lexie's sexual abuse, Lexie has been diagnosed with PTSD, depression, anxiety, and sleep disorders. She sometimes has angry outbursts, cries uncontrollably, and hides under the table. Lexie's mother receives the victim notifications on her behalf, and as of 2017, she was receiving an average of about 10 notifications a day. Lexie's mother cannot imagine how Lexie will be able to move on with her life if she ends up receiving constant reminders that her images are being traded.[4]

"Jane" of the Cinder Block Blue series was sexually abused by her father. She dreads the fact that videos of her abuse are "probably everywhere" and that her victimization is therefore "never going to stop."  Knowing that others are watching her abuse makes her anxious, sad, angry, disgusted, and fearful. She even feels a sense of guilt, stating that those watching her abuse might "think that I liked it," because her abuser "always made me be good for the videos." She worries that when she goes out in public, she will run across a sex offender who might recognize her and then sexually assault her. The psychological harm that Jane suffers from her abuse videos circulating gives her a bleak outlook on life. She cannot see herself getting married or having children. She writes, "I see a lonely future."

"Sierra's" adoptive parents write that she lives in "constant fear that someone will see" the pictures of her sexual abuse and recognize her.  Those pictures are "cemented in her mind" and cause her to sometimes hide under beds and tables wearing layers of clothing.  With Sierra in her teens (at the time the letter was written), her parents worried she would be unable to attend college,

---

[4] As background, known victims and their guardians can opt out of being notified at any time.

because she could not handle the constant fear that the images of her sexual abuse would be discovered by a peer. Similarly, because Sierra lives in a small town, she is constantly fearful that her "secret" will get out. Sierra's emotions are always turbulent and have included regular temper tantrums and a suicide attempt. Her parents wonder how she will ever get better when "she is being exploited and used every day and every night somewhere in the world by someone."

"April," writing as a teenager, describes how she lived with her abuser, who videotaped her sexual abuse and put it on the internet. As a result, she has had to "suffer twice," first from the physical abuse itself, and second from the ongoing anxiety of knowing the images of her abuse will likely be accessible forever. Unlike many victims, "April" at first requested notification each time her images were found in an offender's possession. After 22,000 notifications, she had to stop. She now moves through life fearful of being recognized by pedophiles, feeling uneasy each time someone looks at her for too long. She looks forward to one day becoming a mother, but she fears she will be paranoid that her own children will also become victims of sexual abuse. *Id*.

## 2. The Defendant's History and Characteristics

The defendant's criminal history and his circumstances at the time of the offense both support a significant prison sentence. Hooke is a repeat offender whose record shows that he is not easily deterred. At the time of this offense, Hooke was on supervision for possession of child pornography, and he was living in a halfway house designed to give him the structure and support he would need to avoid reoffending. But reoffend he did. While living at the halfway house, Hooke used sophisticated computer technology to amass a collection of child pornography.

### B.     Need to Deter Future Criminal Conduct and to Protect the Public

The defendant's sentence needs to accomplish the twin goals of deterring the defendant from engaging in future criminal conduct and to protect the public.   In this case, the defendant had previously been convicted of possessing child pornography. He served prison time for that offense and then was placed under court supervision.   While under active supervision and while living in a halfway house, Hooke again collected and distributed CSAM.   Clearly, a significant prison sentence is necessary to adequately deter Hooke from once again returning to the same criminal conduct.

### C.     Need to Provide Treatment to Defendant

Due to the nature and duration of the defendant's crimes, and his history of committing this same offense, he should be ordered to participate in a sex offender treatment program while incarcerated.

### D.     Need to Avoid Unwarranted Sentencing Disparities

Hooke's crimes, history and characteristics, along with his actions related to the crimes of conviction, all support a significant sentence of imprisonment.  The government avers that the need to avoid unwarranted sentence disparities clearly weighs in favor of the mandatory minimum sentence of 120 months' imprisonment and lifetime supervised release, which is within the defendant's guidelines range.   18 U.S.C. § 3553(a)(6).

### IV.  CONCLUSION

The government agrees with the PSR's Guidelines calculations and believes that Hooke's Guidelines range of 120-137 months correctly reflects the seriousness of the offense and the defendant's history and characteristics. In recognition of Hooke's swift acceptance of

responsibility, the government recommends a sentence of 120 months, the lowest sentence the court can lawfully impose in this case.

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____/s/_____
Elizabeth M. Yusi
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number:   757-441-6331
Facsimile Number: 757-441-6689
E-Mail Address: elizabeth.yusi@usdoj.gov

Adam Braskich
Trial Attorney
U.S. Department of Justice
Criminal Division
Child Exploitation and Obscenity Section
1301 New York Ave. NW
Washington, DC, 20530
(202) 616-4598
Email: Adam.W.Braskich@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of February, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

I ALSO CERTIFY that on this 25th day of February, 2023, I caused a true and correct copy of the foregoing Position of the Government with Respect to Sentencing Factors to be sent to the following:

Joshua Coleman
Senior U.S. Probation Officer

                                              /s/
                                        Elizabeth M. Yusi
                                        Assistant United States Attorney